**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10               IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13  KELLY H. CROWELL,                    No. C 05-2170 CW

14            Plaintiff,                 ORDER DENYING
                                         PLAINTIFF'S
15       v.                              MOTION FOR
                                         SUMMARY JUDGMENT
16  JO ANNE B. BARNHART,                 AND GRANTING
    Commissioner of Social Security,     DEFENDANT'S
17                                       CROSS-MOTION FOR
            Defendant.                   SUMMARY JUDGMENT
18
    _____/
19

20

21       Plaintiff Kelly H. Crowell moves for summary judgment.

22  (Docket No. 12.)  Defendant Jo Anne B. Barnhart in her capacity as

23  Commissioner of the Social Security Administration (Commissioner)

24  opposes the motion and cross-moves for summary judgment.  (Docket

25  No. 17)  Having considered all of the papers filed by the parties,

26  the Court DENIES Plaintiff's motion for summary judgment and GRANTS

27  Defendant's cross-motion for summary judgment.

28

BACKGROUND

I.  Procedural History

    Plaintiff first applied for disability insurance benefits
(DIB) and supplemental security income benefits (SSI) under Titles
II and XVI of the Social Security Act (the Act) on March 31, 1994,
claiming a disability onset date of on December 31, 1986.
(Administrative Record (AR) at 314.)  He claimed an inability to
work due to injury and degenerative processes in his back, neck,
shoulder and lumbar spine and severe pain in his upper and lower
extremities.  (AR 314; 85-88; 109.)  The Social Security
Administration (SSA) denied his benefit application initially in an
undated decision and upon reconsideration on October 24, 1994.  (AR
89-92; 95-97.)

    Plaintiff timely requested a hearing before an Administrative
Law Judge (ALJ).  (AR 98-99.)  Plaintiff and a family friend and
employer, Delores Martin, testified at the hearing before an ALJ on
December 3, 1996.  (AR 34-35.)  Plaintiff was represented by
counsel.  (Id.)  In a decision issued on March 4, 1997, the ALJ
determined that Plaintiff does not have any impairments that meet
the Listing of Impairments.  (AR 11; 21.)  The ALJ further found
that Plaintiff was not credible in his allegations of symptoms in
excess of those shown in the medical record and that Plaintiff has
the residual functional capacity for light work.  (AR 22.)

    Plaintiff appealed this decision on April 21, 1997.  (AR 5-
10.)  Plaintiff claimed that the ALJ improperly evaluated his
testimony regarding pain and other symptoms and improperly applied
the medical vocational guidelines.  (Id.)  On April 1, 1998, the

United States District Court

For the Northern District of California

Appeals Council declined to review the ALJ's decision and the decision became the final decision of the Commissioner.  (AR 3-4.)

Thereafter, Plaintiff filed an action for judicial review of the Commissioner's final decision.  (AR 439.)  On January 4, 1999, the United States District Court, Northern District of California, granted summary judgment for Plaintiff and remanded the case for further administrative proceedings.  (Crowell v. Apfel, No. C-98-1621 BZ; AR 439-44.)  The Honorable Bernard Zimmerman found that the ALJ had committed legal error by failing to give reasons for rejecting the testimony of Plaintiff's family friend Delores Martin.  (AR 441.)  Additionally, Magistrate Judge Zimmerman found that the ALJ, in using the Medical Vocational Guidelines, should have either found that any non-exertional limitations did not significantly affect Plaintiff's work or used a vocational expert.  (AR 442.)

Pursuant to this remand, a different ALJ held hearings on January 9, 2003, and on August 12, 2003.  (AR 686-727; 728-762.)  On November 26, 2003, the ALJ issued a decision denying Plaintiff's claims for DIB and SSI disability benefits.  (AR 311-321.)  On March 23, 2005, the Appeals Council declined to review this decision and it became the final decision of the Commissioner.  (AR 294-298.)  The Appeals Council found no reason under its rules to assume jurisdiction and issued an explanation of its decision.  (Id.)  Plaintiff filed the current action for judicial review of the Commissioner's final decision on May 26, 2005.

II.  Factual History

Plaintiff was fifty-two years old at the time of the second

3

United States District Court

For the Northern District of California

hearing decision and has a high school education.  (AR 68.)
Plaintiff has work experience as a shipping and receiving clerk,
construction laborer, and process server.  (AR 315.)  Plaintiff's
longest-held job, as of his 1996 administrative hearing, was as a
quality control inspector for an RV accessory manufacturer.  (AR
68.)  Plaintiff subsequently worked for a year and two months as a
shipping and receiving clerk in 2001 and 2002, a period during
which he claims to have been disabled.  (AR 690-91.)

Plaintiff has had multiple arrests and convictions.  (AR 61-
64.)  Plaintiff served seventeen months in prison for a drug-
related offense beginning in 1989.  (AR 61-62.)  He subsequently
served two prison terms for parole violation for positive drug test
results.  (Id.)  He was imprisoned for a year in 1992 as a result
of his involvement in a fight.  (AR 63-64.)  He went to jail "every
once in a while" in the 1980's for fighting and public
intoxication.  (AR 67-68.)  He reported to an examining
psychiatrist that he had been arrested over 100 times.  (AR 287.)

Plaintiff has a history of alcohol and drug abuse.  (AR 61;
65-67.)  Before the accident that he alleges caused his disability,
Plaintiff had a problem with excessive drinking and resulting
blackouts.  (AR 65-66.)  He lost his license as a result of drunk
driving in 1987.  (AR 67.)  In 1994, Dr. Whitten, an examining
psychiatrist, reported that Plaintiff was addicted to
methamphetamine.  (AR 284.)  Plaintiff told Dr. Whitten that he was
using $250.00 worth of methamphetamine every two days.  (AR 286.)
Plaintiff had been a smoker but quit in 1996.  (AR 69.)

As of the January, 2003, hearing, Plaintiff was living with

4

his wife, son, mother, sister and niece.  (AR 700.)  Plaintiff has
an adult daughter who lives in Idaho and a grandchild.  (AR 60-61.)
Plaintiff's daily activities include doing a few things around the
house, playing with his dog, going to the store and walking around
the block with his wife and son.  (AR 698-99.)  His sister does the
shopping, cooking and cleaning.  (Id.)  Plaintiff visits with
friends once in a while.  (Id.)

Plaintiff claims disability based on injuries sustained in
automobile and motorcycle accidents in the 1980's.  (AR 38-39.)  In
the automobile accident, he broke his collarbone and shoulder.  (AR
39.)  He had reconstructive surgery to repair his shoulder.  (Id.)
The motorcycle accident caused Plaintiff's back injuries.  (Id.)

Plaintiff claims to have constant pain in his shoulder and
back as a result of his injuries.  (AR 41; 43.)  He claims that his
back pain radiates to his head, legs, arms and hands and causes
numbness in his legs and hands.  (AR 42; 694.)  He claims that he
can only work for an hour before his legs and arms become numb.
(AR 47.)  For his pain, Plaintiff takes Tylenol, codeine, and
Motrin.  (AR 734.)  Additionally, Plaintiff has chronic bronchitis.
(AR 736.)  For his respiratory problems, Plaintiff takes Albuterol
twice a day on average.  (AR 733-34.)

Plaintiff is not under the care of a physician.  (AR 49.)
Therefore, the record does not contain an evaluation of Plaintiff's
condition by a treating physician.  Plaintiff was treated by a
chiropractor five times in 1992 and again by a different
chiropractor eight times in 1996.  (AR 182; 290.)

Dr. Kelly H. Otani, M.D., performed an orthopedic evaluation

of Plaintiff on July 7, 1994.  (AR 284-85.)  Dr. Otani reported
that Plaintiff demonstrated multiple inconsistencies in his
physical examination which were not physiological.  (AR 285.)
Based on his examination and objective findings, Dr. Otani believes
that Plaintiff's tolerance for standing is four hours in an eight
hour day and his tolerance for sitting is six hours in an eight
hour day.  (Id.)  Dr. Otani believes that Plaintiff has a tolerance
for lifting forty pounds.  (Id.)

Dr. Keith Whitten, M.D., performed a psychiatric evaluation of
Plaintiff on June 4, 1994.  (AR 286-90.)  Dr. Whitten noted that
Plaintiff tends to minimize his drug use and has a very poor work
record.  (AR 286-87; 289.)  Dr. Whitten concluded that Plaintiff is
able to understand simple instructions, perform within a schedule,
maintain attendance, work with others without being sidetracked,
and maintain concentration for extended periods of time.  (AR 288.)

A.   Plaintiff's first ALJ hearing

At his first administrative hearing, on December 3, 1996,
Plaintiff and Ms. Martin testified.  (AR 35.)  Plaintiff testified
that he was currently working as a courier delivering court papers.
(AR 43-44.)  Regarding this work he testified, "I try to get an
hour or two in when I do the work, you know, and then sometimes
that lays me up for two or three days."  (AR 44.)  Regarding the
same work, Ms. Martin testified, "If I have one in Hayward and one
in, in Martinez, that's a long day for him and usually it ends up
laying him up, you know, for three or four days before I can use
him again."  (AR 79.)

In his March 4, 1997, decision, the ALJ found that Plaintiff

6

had not performed "substantial gainful activity" (SGA) since
December, 1986. (AR 21.)  The ALJ noted that Dr. Otani had found
multiple inconsistencies in Plaintiff's allegations of pain. (AR
19.)  The ALJ found Plaintiff not credible in his allegations of
pain in excess of that supported by the objective medical findings.
(AR 22.)  The ALJ's decision omitted any mention of Ms. Martin's
testimony. (AR 20.)

The ALJ found that Plaintiff's medically determinable severe
impairments are low back pain, right acromioclavicular joint
separation, and a right shoulder coronoid process abnormality. (AR
21.)  According to the ALJ's findings, Plaintiff's impairments do
not meet or equal any listed impairments. (AR 17-19; 21.)  The ALJ
found that Plaintiff has no past relevant work and therefore could
not perform past relevant work. (AR 22.)  The ALJ's finding
regarding Plaintiff's residual functional capacity (RFC) was that
Plaintiff has an RFC for light work. (AR 22.)  Based on this
finding, the ALJ, without testimony from a vocational expert,
applied the Medical Vocational Guidelines to conclude that
Plaintiff is "not disabled" within the meaning of the Act. (AR
21.)

B.   Plaintiff's second ALJ hearing

After the District Court's remand, a second administrative
hearing was held on January 9, 2003. (AR 686-727.)  Plaintiff, a
medical expert, and a vocational expert testified. (AR 686.)
Plaintiff testified that he last worked as a shipping and receiving
clerk for a year and two months, ending in May, 2002. (AR 690-91.)
He testified as to his daily activities as described above.

1    Plaintiff submitted four declarations from relatives and

2 family friends to support his claims of disabling pain and

3 respiratory problems. (AR 617-21.) Ms. Martin submitted one of

4 these declarations as an update of her testimony at the first

5 hearing. (AR 620.) However, Plaintiff provided no witnesses to

6 testify at the hearing regarding how his symptoms affect his

7 ability to function. (AR 687.)

8    Mr. Velton, the vocational expert, testified that Plaintiff's

9 last job was semi-skilled sedentary work. (AR 722.) Dr. Malley,

10 the medical expert, testified that he needed to see a report from

11 an internist and from an orthopedist in order to make a proper

12 evaluation. (AR 709.) As a result of Dr. Malley's request, the

13 ALJ arranged for Plaintiff to be examined by an internist and an

14 orthopedist following the hearing. (AR 723-26.) The ALJ informed

15 Plaintiff that there would be a supplemental hearing once the

16 examinations had been conducted. (AR 723.)

17    Dr. Burton Brody, M.D., performed an internal medical

18 evaluation of Plaintiff on February 13, 2003. (AR 642-44.) In his

19 report, Dr. Brody noted that Plaintiff "tends to dramatize his

20 history and dramatize his distress during the examination,

21 specifically when certain areas are being examined and manipulated,

22 although similar motions without examination are performed without

23 difficulties." (AR 643.) Dr. Brody questioned Plaintiff's full

24 compliance with grip and fist formation tests administered during

25 the examination. (AR 644.) Plaintiff reported that he only takes

26 non-prescription medication for his pain. (AR 643.) In a

27 pulmonary function test report appended to Dr. Brody's report, he

28                                           8

**United States District Court**

For the Northern District of California

indicated that the results are likely invalid and that Plaintiff's effort and cooperation were poor despite repeated instructions. (AR 645.)  Dr. Brody concluded that Plaintiff can sit, stand and walk a total of six hours in an eight hour day.  (AR 644.)

Dr. Lara Salamacha, M.D., performed an orthopedic medical evaluation of Plaintiff on February 18, 2003.  (AR 651-58.)  She noted that Plaintiff's pain behaviors are mildly out of proportion to findings and that his straight leg raise was equivocal.  (AR 654.)  Plaintiff reported to Dr. Salamacha that he does not have pain radiating to his lower extremities.  (AR 652.)  Dr. Salamacha's report indicates that Plaintiff takes only non-prescription medications for his symptoms.  (<u>Id.</u>)  She concluded that Plaintiff can stand or walk for six hours in an eight hour day, with ten minute breaks each hour, and that he has no restrictions on sitting with routine breaks.  (AR 654.)

C.   Plaintiff's third ALJ hearing

After the examinations ordered by the ALJ were conducted, a third administrative hearing was held on August 12, 2003.  (AR 728-62.)  Dr. Malley did not appear at the third hearing but Mr. Velton and Dr. Choslovsky, a different medical expert, did appear and testified.  (AR 729-30.)  Dr. Choslovsky testified that Plaintiff has chronic bronchitis but that he should have no restriction in his functioning due to his respiratory condition.  (AR 735-37.)  Dr. Choslovsky opined that, other than his respiratory condition, there is no evidence that Plaintiff has any medical impairments. (AR 735-36.)

The ALJ issued his decision on November 26, 2003.  He found

9

that Plaintiff has not engaged in SGA since his December 31, 1986, alleged onset date of disability. (AR 320.) The ALJ found that the medical evidence establishes that Plaintiff has severe asthma, low back pain and right shoulder pain but that he does not have an impairment or combination of impairments shown in the Listing of Impairments. (AR 320.) The ALJ's finding regarding Plaintiff's past relevant work was that Plaintiff is unable to perform such work. (Id.)

The ALJ relied on the medical reports of Drs. Salamacha, Otani, Brody, and Whitten in determining Plaintiff's RFC. (AR 316-20.) The ALJ cited instances from the reports of each of these doctors that indicate that Plaintiff is not fully credible. (AR 316-19.) The ALJ credited the conclusions of Drs. Salamacha and Brody that Plaintiff can stand or walk for six hours in an eight-hour workday. (AR 316-17.) The ALJ found that Plaintiff can stand, walk or sit for six hours in an eight hour day, lift twenty pounds, and do simple grasping and fine manipulation. (AR 320.) Therefore, the ALJ concluded that Plaintiff has the residual functional capacity for a wide range of light work. (Id.) Based on the testimony of Mr. Velton, the ALJ found that Plaintiff can perform the jobs of investigator of dealer accounts, counter clerk, and children's attendant, all of which exist in substantial numbers in the national economy. (AR 321.)

LEGAL STANDARD

I.   Overturning a Denial of Benefits

A court cannot set aside a denial of benefits unless the ALJ's findings are based upon legal error or are not supported by

United States District Court
For the Northern District of California

substantial evidence in the record as a whole.  42 U.S.C. § 405(g);
Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Martinez v.
Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  Substantial evidence
is such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion.  Richardson v. Perales, 402 U.S.
389, 401 (1971); Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir.
1995).  It is more than a scintilla but less than a preponderance.
Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

To determine whether substantial evidence exists to support
the ALJ's decision, a court reviews the record as a whole, not just
the evidence supporting the decision of the ALJ.  Walker v.
Matthews, 546 F.2d 814, 818 (9th Cir. 1976).  A court may not
affirm the ALJ's decision simply by isolating a specific quantum of
supporting evidence.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.
1989).  In short, a court must weigh the evidence that supports the
Commissioner's conclusions and that which does not.  Martinez, 807
F.2d at 772.

If there is substantial evidence to support the decision of
the ALJ, it is well-settled that the decision must be upheld even
when there is evidence on the other side, Hall v. Secretary, 602
F.2d 1372, 1374 (9th Cir. 1979), or when the evidence is
susceptible to more than one rational interpretation, Gallant v.
Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).  If supported by
substantial evidence, the findings of the ALJ as to any fact will
be conclusive.  42 U.S.C. § 405(g); Vidal v. Harris, 637 F.2d 710,
712 (9th Cir. 1981).

11

United States District Court

For the Northern District of California

II.  Establishing Disability Under the Social Security Act

Under the Social Security Act, "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).  The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work."  42 U.S.C. § 423(d)(2)(A).  In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques."  42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled within the meaning of the Social Security Act, the Social Security Regulations set out a five-step sequential process.  20 C.F.R. § 404.1520 (b)-(f); Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998).  The burden of proof is on the claimant in steps one through four.  Sanchez v. Secretary of Health and Human Servs., 812 F.2d 509, 511 (9th Cir. 1987).  In step one, the claimant must show that she or he is not currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b). In step two, the claimant must show that he or she has a "medically severe impairment or combination of impairments" that significantly limits his or her ability to work.  20 C.F.R. § 404.1520(c)); Bowen v. Yuckert, 482 U.S. 137, 140 (1987); Smolen v. Chater, 80 F.3d

12

United States District Court

For the Northern District of California

1273, 1290 (9th Cir. 1996).  If the claimant does not, he or she is not disabled.  Otherwise, the process continues to step three for a determination of whether the impairment meets or equals a "listed" impairment which the regulations acknowledge to be so severe as to preclude substantial gainful activity.  <u>Yuckert</u>, 482 U.S. at 141; 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1.  If this requirement is met, the claimant is conclusively presumed disabled; if not, the evaluation proceeds to step four.  At step four, it must be determined whether the claimant can still perform "past relevant work."  <u>Yuckert</u>, 482 U.S. at 141; 20 C.F.R. § 404.1520(e).  If the claimant can perform such work, he or she is not disabled.  If the claimant meets the burden of establishing an inability to perform prior work, the burden of proof shifts to the Commissioner for step five.  At step five, the Commissioner must show that the claimant can perform other substantial gainful work that exists in the national economy.  <u>Yuckert</u>, 482 U.S. at 141; 20 C.F.R. § 1520(f).

DISCUSSION

I.   Presumptive disability

      Plaintiff argues that there is not substantial evidence in the record to support the ALJ's finding that Plaintiff's chronic bronchitis does not meet the requirements of a listed impairment. However, Dr. Choslovsky, the medical expert who testified at the third hearing, concluded that Plaintiff did not meet the listed impairments for chronic obstructive pulmonary disease.  (AR 736.) Plaintiff did not present evidence to refute Dr. Choslovsky's conclusion.  Therefore, by relying on the only expert medical

13

testimony provided on the issue, the ALJ's conclusion that Plaintiff does not meet the listed impairment for chronic obstructive pulmonary disease is supported by substantial evidence.

Plaintiff also argues there is not substantial evidence in the record to support the ALJ's finding that Plaintiff does not have spinal stenosis, an impairment listed in § 1.04.  However, Dr. Choslovsky testified that, other than his chronic bronchitis, Plaintiff did not have any medical impairments.  (AR 736.) Plaintiff did not present evidence to refute this testimony. Therefore, because he relied on the only expert medical testimony provided, the ALJ's conclusion that Plaintiff has no other listed impairments is supported by substantial evidence.

Plaintiff argues that his impairments meet the requirements of the impairment listed in § 1.05C of the Listing of Impairments: amputation of one hand and one lower extremity at or above the tarsal region, with inability to ambulate effectively.  There is no evidence in the record that Plaintiff has experienced an amputation.  Therefore, there was substantial evidence to support the ALJ's finding that Plaintiff's impairments do not meet the impairment listed in § 1.05C of the Listing of Impairments.

II.   The ALJ's evaluation of Plaintiff's pain testimony

Plaintiff argues that the ALJ erred by rejecting Plaintiff's testimony regarding his pain without giving specific reasons for finding Plaintiff not credible.  In deciding whether to accept a claimant's subjective symptom testimony, the ALJ is required to engage in a two-part analysis.  First, the ALJ must determine whether there is a medically determinable impairment that could

14

reasonably be expected to cause the claimant's symptoms.  <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407 (9th Cir. 1986); 20 C.F.R. § 404.1529(a) and (b).  Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms, considering evidence beyond the claimant's own testimony.  20 C.F.R. § 404.1529(c)).

Under the <u>Cotton</u> test, a claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  <u>Bunnel v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (quoting <u>Cotton</u>, 799 F.2d at 1407-08).  "[I]t is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings."  <u>Cotton</u>, 799 F.2d at 1407; <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989).

Once a claimant meets the <u>Cotton</u> test, the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupportable by objective evidence.  Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995) (quoting <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)); <u>Smolen</u>, 80 F.3d at 1281.

Plaintiff testified as to his pain and other symptoms that he argues prevent him from working regularly.  (AR 38-43; 692-98.) Plaintiff also produced medical evidence that could logically support his claimed symptoms.  (AR 284-85; 642-44; 551-54.) Therefore, Plaintiff meets the first step of the <u>Cotton</u> test.

15

1    However, the ALJ provided several reasons for discrediting

2    Plaintiff's testimony, each of which is supported by the record.

3    Primarily, the ALJ noted that the medical record contradicts

4    Plaintiff's claim that he cannot walk or stand for more than an

5    hour without needing to rest.  Three examining physicians concluded

6    that Plaintiff can stand or walk for at least four hours in an

7    eight hour day.  (AR 284-85; 642-44; 651-54.)  Plaintiff's treating

8    chiropractor, after treating Plaintiff for back strain on five

9    occasions, concluded that Plaintiff could return to work.  (AR

10   182.)

11        A testifying medical expert, after reviewing the record,

12   opined that plaintiff's residual functional capacity for work is

13   unrestricted.  (AR 738.)  Plaintiff produced no medical records

14   from a treating physician to support his claims of disabling levels

15   of pain.  Therefore, Plaintiff's testimony that his pain and other

16   symptoms prevent him from working is contradicted by strong

17   objective medical evidence.

18        Another reason the ALJ provided for rejecting Plaintiff's pain

19   testimony was that three examining physicians noted inconsistencies

20   and lack of effort on Plaintiff's part during examinations.  (AR

21   285; 318-19; 643; 645; 653; 654.)  For instance, Dr. Brody, an

22   examining physician, noted that Plaintiff expressed distress while

23   being examined but could perform similar motions without difficulty

24   when not being examined.  (AR 643.)  Statements such as these from

25   examining physicians are probative for evaluating a claimant's

26   credibility.  Batson v. Commissioner, 359 F.3d 1190, 1196 (9th Cir.

27   2004).  Therefore, the ALJ provided another valid reason for

28

16

1    rejecting Plaintiff's pain testimony.

2         An additional reason the ALJ provided for rejecting
3    Plaintiff's pain testimony was that Plaintiff has not been taking
4    strong pain medication.  The ALJ determined that Plaintiff's use of
5    only non-prescription pain medication is not consistent with the
6    disabling level of pain Plaintiff claimed to experience and thereby
7    undermines that claim.  That a claimant is not using medication
8    commensurate with the level of pain alleged is a valid reason for
9    discrediting the claimant's pain testimony.  <u>Flatten v. Secretary</u>
10   <u>of Health and Human Servs.</u>, 44 F.3d 1453, 1464 (9th Cir. 1995).
11   Therefore, the ALJ provided an additional valid reason for
12   rejecting Plaintiff's pain testimony.

13        Another reason the ALJ provided for rejecting Plaintiff's
14   subjective pain testimony is that Plaintiff had worked a full-time
15   job for over a year during the period in which he claims to have
16   been disabled.  Plaintiff testified as to this work.  (AR 690-91.)
17   The ALJ concluded that this is not consistent with the disabling
18   pain and other symptoms he alleges.  Therefore, the ALJ provided
19   another legitimate reason for discrediting Plaintiff's pain
20   testimony.

21        In his reply, Plaintiff argues that he was entitled to a trial
22   work period before the fact that he has worked can be used to
23   establish that he is not disabled.  However, such trial period is
24   be considered successful, and thereby may be used to establish that
25   the claimant can work, if it lasts more than six months, regardless
26   of the reason for termination.  SSR 84-25.  The full-time job that
27   the ALJ took into consideration lasted for over a year.  Therefore,

28                                    17

it was proper for the ALJ to consider evidence of this work
experience to conclude that Plaintiff was not experiencing the
disabling level of pain he alleged.

III. Proper evaluation of the lay testimony

Plaintiff argues that the ALJ erred by not considering the lay
testimony regarding Plaintiff's pain and other symptoms.  In a
claim for disability benefits, the Commissioner will consider
"observations by non-medical sources" as evidence of the claimant's
impairment.  20 C.F.R. § 404.1513(e)(2).  Lay witness testimony by
friends, neighbors and family members in a position to observe the
claimant's symptoms is competent evidence.  Spraque v. Bowen, 812
F.2d 1226, 1232 (9th Cir. 1987); Bilby v. Schweiker, 762 F.2d 716,
719 n.3 (9th Cir. 1985).  "Disregard of this evidence violates the
Secretary's regulation that he will consider observations by
non-medical sources as to how an impairment affects a claimant's
ability to work."  Spraque, 812 F.2d at 1232 (citing 20 C.F.R
§ 404.1513(e)(2)).

An ALJ cannot discount lay witness testimony simply because he
finds the claimant to be not credible.  Dodrill v. Shalala, 12 F.3d
915, 918-19 (9th Cir. 1993).  The ALJ must give reasons that are
"germane to each witness whose testimony he rejects."  Smolen, 80
F.3d at 1288; Dodrill, 12 F.3d at 919.

Family members and friends, including Ms. Martin, submitted
declarations describing how Plaintiff's impairments affect his
ability to function.  (AR 617-21.)  These accounts allege that
after moving about for even a short time Plaintiff must rest due to
his back pain and that he needs to take asthma medication several

United States District Court

For the Northern District of California

times a day.  Id.  The medical evidence, however, indicates that
Plaintiff can stand for up to six hours in an eight hour day and
lift at least twenty-five pounds occasionally and ten pounds
frequently.  (AR 285; 644; 654.)  Furthermore, the medical evidence
indicates that Plaintiff should have no restriction in his
functioning as a result of his respiratory condition.  (AR 737.)

The ALJ discounted the testimony of Plaintiff's family and
friends because their accounts were contradicted by the medical
evidence of record.  (AR 320.)  That a lay witness's testimony is
contradicted by medical evidence is an acceptable reason for
rejecting lay testimony regarding a claimant's pain and other
symptoms.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).
Therefore, the ALJ permissibly rejected the lay testimony.

IV.  The ALJ's interpretation of the vocational expert's testimony

Plaintiff argues that the testimony of the vocational expert
supports his contention that he cannot perform light work.  The
vocational expert did testify that, if Plaintiff could not walk or
stand for more than an hour, he would be restricted in performing
light work.  (AR 754-55.)  However, the vocational expert made this
assessment in response to a hypothetical question posed by
Plaintiff's counsel regarding a hypothetical person who cannot walk
or stand for more than an hour.  Id.

An ALJ is not bound to accept as true the restrictions
presented in a hypothetical question propounded by a claimant's
counsel.  Magallanes, 881 F.2d at 756-57.  Based on his evaluation
of the evidence, an ALJ can reject those restrictions.  Martinez,
807 F.2d at 774.  The ALJ rejected the hypothetical restrictions

19

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

posed by Plaintiff's counsel and found that Plaintiff can stand or

walk for six hours in an eight hour day. (AR 320.) Therefore, the

ALJ permissibly rejected the vocational expert's testimony in

response to Plaintiff's counsel's hypothetical.

V.   The medical expert's testimony supports the ALJ's finding that
     Plaintiff could do light work.

     Plaintiff also argues that Dr. Choslovsky's testimony supports

his contention that he cannot perform light work. The medical

expert testified that if Plaintiff's respiratory testing had been

done before Plaintiff had taken any medication, the tests might

have shown him to be more severely impaired. (AR 744.) However,

the medical expert clarified that Plaintiff's respiratory condition

is not severe when he is medicated and that he should have no

restriction in his functioning with respect to his respiratory

condition. (AR 737; 744.) Therefore, when viewed in its entirety,

the testimony of the medical expert supports the ALJ's findings

that Plaintiff's impairments do not keep him from working.

VI.  Full and fair inquiry.

     Finally, Plaintiff argues that the ALJ abused his discretion

by failing to develop the record fully. When presiding over an

administrative hearing, "the ALJ is not a mere umpire at such a

proceeding, but has an independent duty to fully develop the

record, especially where the claimant is not represented." Higbee

v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) (citing Cox v.

Califano, 587 F.2d 988, 991 (9th Cir. 1978)); see also Thompson v.

Schweiker, 665 F.2d 936, 939 (9th Cir. 1982) (ALJ is required to

pursue relevant avenues of inquiry).

However, Plaintiff does not specify what relevant facts or lines of inquiry the ALJ failed to pursue.  Plaintiff was given three administrative hearings, all of which he attended accompanied by counsel.  Plaintiff did not have any additional medical records that the ALJ could have reviewed, because he was not under the care of a physician.  When the medical expert testifying at the second administrative hearing advised the ALJ that the record needed internal medical and orthopedic evaluations to be complete, the ALJ had an internist and an orthopedist examine Plaintiff and provide reports.  The ALJ reviewed the reports of the four doctors that had examined Plaintiff and discussed the reports in his decision.

Additionally, it is a claimant's rather than an ALJ's duty to furnish medical evidence of the claimant's impairments.  20 C.F.R. § 404.1512(a).  Therefore, the ALJ was not obliged to provide Plaintiff with a treating physician to furnish a report.  Accordingly, the ALJ did not abuse his discretion by failing to develop the record fully.

                                CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgement is denied and Defendant's cross-motion for summary judgement is granted.  Judgment shall enter accordingly.  Each party shall bear his or her own costs.

IT IS SO ORDERED.


Dated:  9/20/06

                              _____
                              CLAUDIA WILKEN
                              United States District Judge

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court

For the Northern District of California